UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUSTIN AND LAURATO, P.A., and
SISCO-LAW, P.A.,

    Plaintiffs,

vs.                                               CASE NO. 8:12-CV-1648-T-17-AEP

UNITED STATES OF AMERICA,

    Defendant.

_____/

## ORDER

This cause is before the Court on the Motion by the United States of America to Dismiss Action and Supporting Memorandum. Dkt. 9. The government's position is that the Plaintiffs, Austin and Laurato, P.A. ("A&L") and Sisco-Law, P.A. ("Sisco") (collectively "Plaintiffs"), failed to bring their wrongful levy action within the allotted time set forth in 26 U.S.C. § 6532 (c) and, therefore, this Court is without subject matter jurisdiction to adjudicate the dispute. Because the Court finds *sua sponte* that the Plaintiffs lack Article III standing to bring the claim, in addition to failing to bring the claim within the nine month limitations period, the Court is without subject matter jurisdiction to reach the merits of the dispute and the government's motion is GRANTED. Plaintiffs' request for leave to amend the complaint to plead a procedural due process claim is DENIED because it would be futile.

## FACTS

The chain of events starts in July 2010 when the City of Tampa seized certain funds from various individuals in conjunction with a criminal matter.[1] Dkt. 1, ¶ 8. Plaintiffs are Florida-based law firms that were hired by various individuals on a contingency fee basis to represent them in an action to seek a return of the seized funds. *Id.* at ¶¶ 4, 5, 9, 10. Plaintiff A&L represented Michelle Gonzalez and First Medical Group. *Id.* at ¶ 9. Plaintiff Sisco represented Jorge M. Gonzalez-Betancourt. *Id.* at ¶ 10. Representing their respective clients (the "Clients"), Plaintiffs filed an action in state court pursuant to Section 932 of the Florida Statutes, styled *In Re the Forfeiture of Two Hundred Twenty-One Thousand Eight Hundred Ninety-Eight Dollars ($221,898.00) in U.S. Currency*, Case No. 10-CA-1620. *Id.* at ¶ 11. After an adversarial probable cause hearing, on August 25, 2010, the state trial court entered an order directing the City of Tampa to return the seized funds to the Clients.[2] *Id.* at ¶¶ 12-13. The order to return the property to the Clients was recorded in the public records of Hillsborough County on September 1, 2010. *Id.* at ¶ 15.

Notwithstanding the state court's order, on August 27, 2010, the Internal Revenue Service ("IRS") served the City of Tampa with a notice of levy, directing the City of Tampa to relinquish possession of the seized funds to the IRS pursuant to a tax lien. *Id.* at ¶ 14. Plaintiffs allege that the IRS recorded a tax lien in Hillsborough County as against Jorge M. Gonzalez-Betancourt but not the other two Clients, Michelle Gonzalez and First Medical Group. *Id.* at ¶¶ 16-17. After the

---

[1] All facts are taken from the allegations contained in Plaintiffs' Complaint for Wrongful Levy Action and Demand for Jury Trial. *See* Dkt. 1.

[2] It is not clear from the complaint whether Plaintiffs allege that Judge Foster directed the City of Tampa to return the seized funds to only the Clients identified in the pleading or whether there exists additional claimants.

state court's order had been appealed and affirmed, the City of Tampa, on June 24, 2011, transferred the seized funds to the United States Attorney for the Middle District of Florida, who then transferred the funds to the IRS. *Id.* at ¶ 20.

After the City of Tampa transferred the seized funds, Plaintiffs (as counsel for their Clients and also as a claimant for attorneys' fees) endeavored on several occasions and through various means to have the seized funds returned and perfect their interest in them. On July 19, 2011, Plaintiffs had a hearing on a motion to tax costs, award attorneys' fees, and have the seized funds returned. *Id.* at ¶ 22. On August 26, 2011,[3] the trial court denied the motion as moot because, according to the state court judge, the funds had already been transferred to the IRS and the appropriate avenue to resolve the matter was through either the internal processes of the IRS or a claim in federal district court. *Id.* at ¶ 24.

On July 26, 2011, Plaintiffs sent a letter to the office of the United States Attorney for the Middle District of Florida requesting a return of the seized funds. *Id.* at ¶ 25. Plaintiffs did not receive a response. *Id.* at ¶ 27. On June 6, 2012, Plaintiffs sent a letter to the IRS revenue officer assigned to the taxpayer's case requesting a meeting to discuss the seized funds. *Id.* at ¶ 28. Declining the meeting, the revenue officer directed Plaintiffs to the Taxpayer Advocate Service. Plaintiffs, on two separate occasions (i.e., June 27, 2012 and July 10, 2012), sent a letter to the Taxpayer Advocate Service asking for assistance in obtaining the return of the seized funds. *Id.* at ¶¶ 29-30. On July 19, 2012, the Taxpayer Advocate Service denied Plaintiffs' requested

---

[3] The complaint contains an obvious typographical error and identifies the date of the order as August 26, 2010. *See* Dkt. 1, at ¶ 24. Following the temporal sequence of the other dates identified in the pleading, the Court notes that August 26, 2011 seems the more probable date on which the order was entered and will proceed accordingly with its analysis. *See* Dkt. 1, at ¶ 23.

assistance and directed them to file a lawsuit. Accordingly, on July 27, 2012, Plaintiffs filed this wrongful levy action against the government seeking the return of certain funds seized by the IRS.

## DISCUSSION

The government maintains that this Court is without subject matter jurisdiction over this dispute because the nine month limitations period for challenging an administrative levy by the IRS has long since passed. *See* Dkt. 9, p. 2. In response, Plaintiffs argue the limitations period has not lapsed or, in the alternative, the complaint states a claim for a due process violation and should therefore not be dismissed. Although not addressed by the parties, the Court deems it sage to first address whether the Plaintiffs have Article III standing to bring this action.[4]

**A. Plaintiffs do not have standing to bring this action.**

Before proceeding to the merits of the dispute, the Court must first determine if Plaintiffs have standing to bring the extant claim. A court is without subject matter jurisdiction to hear a particular case unless there exists an Article III case or controversy. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). There are three constitutionally mandated elements to meet the standing requirement: "[f]irst, the plaintiff must have suffered an 'injury in fact' - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) imminent, not 'conjectural' or 'hypothetical,' . . . [s]econd, there must be a causal connection between the injury and the conduct complained of -the injury has to be 'fairly traceable to the challenged

---

[4] This Court has an affirmative obligation to ensure it is presented with a justiciable controversy upon which its limited constitutional grant of authority is based. *Cuban Am. Bar. Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1222 (11th Cir. 1995). "The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties." *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982).

action of the defendant, and not the result of the independent action of some third party not before the court . . . [t]hird, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). In other words, "[s]tanding for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressibility." *Dermer v. Miami-Dade County*, 599 F.3d 1217, 1220 (11th Cir. 2010).

"To allege a justiciable cause of action, a plaintiff must plead facts that are sufficient to confer standing and demonstrate that the claim is ripe for determination." *Id.* The plaintiff "must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Plaintiffs must have a "personal stake in the outcome" of the case, *Baker v. Carr*, 369 U.S. 186, 204 (1962), and "must allege some threatened or actual injury resulting from the putatively illegal action." *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973). "Abstract injury is not enough[;] [t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural" or hypothetical." *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). "If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." *Miccosukee Tribe of Indians of Florida v. Florida State Athletic Comm'n*, 226 F.3d 1226, 1230 (11th Cir. 2000).

This entire inquiry can begin and end with the first element – whether there exists an injury in fact. To establish an injury in fact, a plaintiff must demonstrate that it has some "legally protected interest" that has been harmed. *Bochese*, 405 F.3d at 980. "That interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right." *Primera Iglesia Baustista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1304 (11th

Cir. 2006) (quoting *Vermont Agency of Nat'l Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000)). As a general matter, "[a]n attorney whose only interest in a case derives from her contingency fee arrangement with the plaintiff or from a statutory-fee provision does not herself have standing as a separate party to the suit." *Hand v. Bibeault*, 400 Fed. App'x 526, 528 (11th Cir. 2010); *see generally Smith v. South Side Loan Co.*, 567 F.2d 306, 307 (11th Cir. 1978). When the claim is derived from a statute, such as the instant one, "the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff." *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972). Standing to sue the United States for a wrongful levy pursuant to 26 U.S.C. § 7426 is limited to "persons who have a fee simple or equivalent interest, a possessory interest, or a security interest in the property levied upon." *Accord Frierdich v. United States*, 985 F.2d 379, 382-83 (7th Cir. 1993) (Posner, J.); *see also McGinness v. United States*, 90 F.3d 143, 146 (6th Cir. 1996); *Aspinall v. United States*, 984 F.2d 355, 358 (10th Cir. 1993); *Valley Finance, Inc. v. United States*, 629 F.2d 162, 168 (D.C. Cir. 1980), *cert. denied*, 451 U.S. 1018 (1981).

Plaintiffs' sole claim is predicated on attorneys' fees allegedly owed to them pursuant to a contingency fee agreement with their Clients in the state court proceedings. Dkt. 1, ¶¶ 9-10. At the outset, the Court pauses to note a critical distinction here between the Plaintiffs in this case and the claimants in the underlying state court action (Plaintiffs' Clients). According to the complaint, the presiding judge in the state court action entered an order directing the City of Tampa to return the seized funds to the Plaintiffs' Clients. *Id.* at ¶¶ 13, 19. The Plaintiffs subsequently moved to tax costs and for an award of attorneys' fees. *Id.* at ¶ 22. The presiding judge denied that motion as moot "in part because the City of Tampa had already transferred the

seized funds to the United States." *Id.* at ¶¶ 23-24. By Plaintiff's own allegations, they do not have a legally cognizable property interest in the seized funds. This is further buttressed by Plaintiffs' request that this Court "determine that they hold a valid attorney fee charging lien upon the seized funds pursuant to their contingent fee contracts pursuant to Florida law." Dkt. 1, p. 8. This request necessarily requires a court to determine the reasonableness of the fees and the priority of the fee claim. *See id.* (asking the Court to "determine that the amount of said fees are as set forth in said contingent fee contracts are reasonable for their services performed in obtaining the order for the return of the seized property" and to "determine that the amount of their charging liens have priority over the IRS's tax lien claim as to said funds."). Moreover, the interest protected by the wrongful levy statute (i.e., an interest in the seized funds) belongs to the Plaintiffs' Clients, not the Plaintiffs. Further attenuating Plaintiffs' interest in the seized funds is the necessary, but, as of yet, inchoate transfer of the seized funds to their Clients to trigger the contingency clause of the fee agreement. The result might be different if Plaintiffs had been successful in obtaining an order for fees and a resultant charging lien on the seized funds. Although the Court is sympathetic to their claim, the Court finds that Plaintiffs lack standing to bring a wrongful levy action against the United States.

**B. The Plaintiffs' wrongful levy action is untimely.**

In addition to the standing issue, Plaintiffs' wrongful levy claim fails for lack of subject matter jurisdiction because they failed to bring the claim within the statutorily prescribed limitations period. In most instances, a defense predicated on a statute of limitations will not implicate the Court's subject matter jurisdiction. *See Pugh v. Brook*, 158 F.3d 530, 533-34 (11th Cir. 1998). The unique nature of a suit against the United States, which is generally immune

from suit, waiving sovereign immunity only in certain instances and for limited time periods, presents a much different situation. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Consequently, if a statute authorizing suits against the United States limits the time period in which suits may be brought, the United States retains its sovereign immunity as to any suits brought outside of that time period." *Compagnoni v. United States*, 173 F.3d 1369, 1370 at n. 3 (11th Cir. 1999) (citing *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983)). "Therefore, the court does not have subject matter jurisdiction over a suit against the United States that is barred by the statute of limitations." *Id.*

The IRS has available to it two principal means of enforcing collection of unpaid taxes: a lien foreclosure suit or an administrative levy. This lawsuit concerns the latter. The levy is a "legally sanctioned seizure and sale of property." *EC Terms of Years Trust v. United States*, 550 U.S. 429, 431 (2007). Under 26 U.S.C. § 6332 (a), the IRS can serve a notice of levy on a third party that holds the assets of a delinquent taxpayer. This procedure has been coined a "provisional remedy" because it merely "creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government." *United States v. National Bank of Commerce*, 472 U.S. 713, 721 (1985). Unlike the foreclosure of a tax lien, an administrative levy does not immediately vest in the government a property interest or even determine the priority of the government's interest (if it has one) in the seized property. Rather, the levy insulates the government "against diversion or loss while such claims are being resolved." *Id.* A person who claims an interest in or a lien on the property levied may file a civil action against the United States in district court. 26 U.S.C. § 7426 (a)(1). The United States Supreme Court made clear that a claim pursuant to 26 U.S.C. §

7426 was the exclusive remedy for third parties challenging a levy. *See EC Terms of Years Trust*, 550 U.S. at 436 (resolving a conflict between the Fifth and Ninth Circuit Courts of Appeals). A third party has nine months from the date of the levy to bring a wrongful levy action. *See* 26 U.S.C. § 6532 (c). This period can be extended by up to twelve months by filing a request for a return of the property with the Secretary of the IRS. 26 U.S.C. § 6532 (c).

Thus, in order to determine whether the statute of limitations has run, the Court must first define the appropriate starting point. The government argues that starting date should be August 27, 2010, the date City of Tampa was served with the notice of the levy. *See* 26 C.F.R. § 301.6331-1 (c) ("[T]he date and time the notice is delivered to the person to be served is the date and time the levy is made."). Plaintiffs, on the other hand, argue that the correct starting date is November 4, 2010, the date the notice of lien was filed in the public record. Plaintiffs assert, without legal support, that "the starting date should be no sooner that [sic] when the claimant receives actual notice, and certainly no sooner than when the notice of lien is recorded." Dkt. 10, p. 5.

Rather than squarely address what appears to be a straightforward regulation, Plaintiffs cite to three cases discussing equitable tolling of the statute of limitations. *See, e.g., Fifth Third Bank v. United States*, 98 A.F.T.R. 2d 2006-8364, 2007-1, 2006 WL 3791950 (S.D. Ohio Dec. 22, 2006), *vacated by* 2008 WL 5749571 (S.D. Ohio Sept. 17, 2008); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir. 1995); *Carter v. United States*, 110 Fed. App'x 591, 597 (6th Cir. 2004). To decide the issue, the Court finds persuasive the United States Supreme Court's decision regarding the statute of limitations for filing a tax refund. Recognizing that tolling the limitations period for filing tax refund claims pursuant to 26 U.S.C. § 6511 would exact a

significant administrative toll on the IRS's already strained resources, the Supreme Court stated, "[t]he nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system." *See United States v. Brockamp*, 519 U.S. 347, 352 (1997). With similar goals in mind, Congress intentionally crafted a narrow waiver of sovereign immunity for challengers in wrongful levy actions. "The demand for greater haste when a third party contests a levy is no accident; as the Government explained in the hearings before passage of the Act: '[s]ince after seizure of property for nonpayment of taxes [an IRS] district director is likely to suspend further collection activities against the taxpayer, it is essential that he be advised promptly if he has seized property which does not belong to the taxpayer." *EC Terms of Years Trust*, 550 U.S. at 431 (citing Hearing on H.R. 11256 and H.R. 11290 before the House Committee on Ways and Means, 89th Cong., 2d Sess., 57-58 (1966)); *Rock Island A. & L.R. Co. v. United States*, 254 U.S. 141 (1920). Congress intentionally struck a delicate balance between the rights of third party claimants contesting a government levy and the need to maintain a workable tax system. If Congress becomes unsettled with the effect of its decision then it is free to amend the statute.[5] The Court, however, declines the invitation to usurp the legislative role and adopt what appears to be at best a minority view of the circuits considering the issue. *See Becton Dickenson and Co. v. Wolckenhauer*, 215 F.3d 340, 352 (3d Cir. 2000).

---

[5] Notably, one year after the Supreme Court's unanimous decision in *Brockamp*, Congress enacted a statutory exception to the time limitations set forth in 26 U.S.C. § 6511. *See Abston v. C.I.R.*, 691 F.3d 992, 994 (8th Cir. 2012).

The Court, therefore, concludes that the clear language of the statute and regulation, coupled with the absence of any persuasive authority to the contrary, mandates the starting date urged by the government—the date the recipient receives the notice of levy. *See also Creditbank v. Milwaukee Elec. Constr., Inc.*, 707 F.Supp. 513 (S.D. Fla. 1988). Although Plaintiffs contend otherwise, the United States is under no obligation to notify possible third party claimants when property has been levied. *See Dieckmann v. United States*, 550 F.2d 622, 624 (10th Cir. 1977); *Mountain States Bank v. United States of America*, 1992 WL 150098, at *2 (D. Col. Mar. 31, 1992); *Expoimpe v. United States*, 609 F. Supp. 1098, 1101 (S.D. Fla. 1985). There being no allegation that Plaintiffs filed a request for the return of property on or before May 27, 2011, this Court is without subject matter jurisdiction to adjudicate the wrongful levy action. *See, e.g., Miller v. United States*, 1998 WL 624087, at *3 (E.D. La. Sept. 14, 1998) (finding untimely wrongful levy claim brought under 26 U.S.C. § 6532 (c) approximately 10 months after the notice of levy was served); *Tompkins & McMaster v. United States*, 91 F.3d 134 (4th Cir. 1996) (affirming district court that dismissed for lack of subject matter jurisdiction a wrongful levy claim brought under 26 U.S.C. § 6532 (c) approximately 12 months after the notice of levy was served). Accordingly, Plaintiffs' claim for wrongful levy is dismissed.

**C. It would be futile to permit Plaintiffs leave to amend to assert a procedural due process claim.**

The final issue the Court must address is whether to grant Plaintiffs' request for leave to amend the complaint to add a claim for procedural due process.[6] A court should grant leave to

---

[6] Although Plaintiffs state in their response that the "Complaint states a cause of action for a due process violation by the USA," the Court notes that the pleading identifies one cause of action (for wrongful levy only). Substantively, the pleading is devoid of the necessary facts to

amend a pleading "freely . . . when justice so requires." Rule 15(a)(2), Fed. R. Civ. P.; *Patel v. Georgia Dept. BHDD*, 2012 WL 3206449, at *1 (11th Cir. Aug. 8, 2012). A district court may deny a motion for leave to amend, among other reasons, when the proposed amendment is futile. *Maynard v. Bd. of Regents of Div. of Univ. of Florida Dept. of Educ. ex rel. Univ. of South Florida*, 342 F.3d 1281, 1287 (11th Cir. 2003). A proposed amendment is futile "when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). For Plaintiffs' proposed claim to pass muster, this Court must agree with the Third Circuit in *Sheafnocker v. C.I.R.*, 642 F.3d 428 (3d Cir. 2011), and hold that the failure to notify a potential third party claimant in an administrative levy fails to comport with the procedural due process requirements of the United States Constitution.

In *Sheafnocker*, the IRS levied upon funds in a joint bank account held by a delinquent tax payer and his ex-wife. *Id.* at 431. The specific funds seized by the IRS were proceeds from the sale of their marital home prior to the divorce and the certificate of deposit bore the following notation: "Our terms—to be held in lieu of Texas court C.S. case resolution. J.S." *Id.* The government admitted that it never notified the ex-wife of the levy, who discovered the funds were missing fourteen months after the levy when she attempted to deposit funds into the account. *Id.* The district court dismissed the ex-wife's wrongful levy action because her claim was outside the limitations period set forth in 26 U.S.C. § 6532 (c). *Id.* at 432. On appeal, the ex-wife raised a

---

state a plausible claim for relief. Indeed, the allegations contained in the affidavit that was submitted with Plaintiffs' response were ostensibly meant to augment the otherwise factually deficient pleading. *See* Dkt. 10-1. Accordingly, the Court will construe the argument as a motion for leave to amend to assert a claim for procedural due process based on the facts proffered in the affidavit. *See* Dkt. 10, p. 11 ("Plaintiffs request leave to amend [to] . . . state additional facts in support of a due process violation argument.).

due process claim arising from the lack of notice of the administrative levy.[7] *Id.* Focusing on the remedy sought, the Third Circuit held that the ex-wife did not have a basis to claim a substantive right to money damages for her due process claim,[8] but it held that the district court had jurisdiction to consider the due process claim "to the extent that she seeks a purely procedural remedy." *Id.* at 434. In other words, the Third Circuit held that the ex-wife should be afforded the opportunity to have her challenge to the levy decided on its merits. *Id.* at 435.

In this Court's view, the right to have a challenge to an administrative levy decided on its merits is substantively no different than the remedy afforded in a wrongful levy action under 26 U.S.C. § 7426. To digress, an administrative levy is merely a "provisional remedy" that serves only to place the government in a custodial relationship between the IRS and the person holding the property. *See National Bank of Commerce*, 472 U.S. at 720-21. The IRS merely "steps into the taxpayer's shoes" and enjoys the same rights as the taxpayer in the property. *United States v. Craft*, 535 U.S. 274, 291 (2002). The Supreme Court in *National Bank of Commerce* analogized an administrative levy by the IRS on a joint account to the taxpayer's absolute right under state law to withdraw the funds without notice to his codepositors. 472 U.S. at 723. "Both actions are similarly provisional and subject to a later claim by a codepositor that the money in fact belongs

---

[7] The ex-wife also argued that her wrongful levy claim should be equitably tolled, which was rejected based on the Third Circuit's previous holding in *Becton* that equitable tolling is not available in wrongful levy actions. *Id.* at 433 ("*Becton*, therefore, eliminates the District Court's jurisdiction of Scheafnocker's suit to the extent that she asserts a wrongful levy claim.").

[8] The Tucker Act, which authorizes the Court of Claims to render a money judgment against the United States for claims founded on the Constitution, is only a jurisdictional statute that does not independently create any substantive rights. *See United States v. Testan*, 424 U.S. 392, 398 (1976).

to him or her." *Id.* at 728. A third party claiming a legal right to the property levied upon can file a wrongful levy action against the United States and have the question of ultimate ownership of the property decided under the applicable state law. *Id.* at 722-23. Simply put, there is no constitutionally mandated notice requirement when the IRS is simply acting as a proxy for the taxpayer and holding the funds for the statutorily prescribed time period within which a third party can object.

Even if the Court were to find that there exists a procedural due process claim in this context, Plaintiffs have not (and could not) state a claim for relief. It is axiomatic that a plaintiff must have a sufficient interest in property to impose upon the government constraints on the manner in which it decides to deprive the individual of that property. *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). Here, Plaintiffs do not claim to be joint owners of the funds seized by the IRS. Plaintiffs' Clients might have a legally protected interest in the seized funds, but they are not the plaintiffs in this action. Dkt. 1. ¶¶ 12-13, 15. Rather, Plaintiffs' interest is most aptly described as a future expectancy to a payment from their Clients that becomes enforceable only if the seized funds are returned. Importantly, Plaintiffs' entire claim is contractual in nature and enforceable against their Clients, not the IRS and not the delinquent taxpayer. In the end, the Court is mindful of the seemingly inequitable result of this case. But Congress, for good reason, decided to open only a narrow window of time for third parties to file claims against the United States for the return of wrongfully levied property. Any decision to broaden the waiver of sovereign immunity for claims by third party claimants in administrative levies is best left for the legislature. The Court, while sympathetic to Plaintiffs, will not disturb the delicate balance put into place by Congress. Accordingly, it is

ORDERED that Motion by the United States of America to Dismiss Action and Supporting Memorandum is GRANTED. Plaintiffs' complaint is dismissed with prejudice and the Clerk of Court is directed to close the case.

DONE and ORDERED in Chambers, in Tampa, Florida, this 26th day of November, 2012.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record