UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUSTIN AND LAURATO, P.A., and
SISCO-LAW, P.A.,

    Plaintiffs,

vs.                                                        CASE NO. 8:12-CV-1648-T-17-AEP

UNITED STATES OF AMERICA,

    Defendant.

_____/

## ORDER

This cause is before the Court on the Plaintiffs, Austin and Laurato, P.A.'s ("A&L") and Sisco-Law, P.A.'s ("Sisco") (collectively "Plaintiffs"), Motion for Reconsideration or Rehearing of Order of Dismissal. (Dkt. 12). Plaintiffs seek reconsideration of the Court's order dismissing their complaint and denying leave to amend. Specifically, the Court held: (1) Plaintiffs lack Article III standing to bring the wrongful levy claim in this instance, (2) Plaintiffs failed to bring the claim within the nine month limitations period, and (3) Plaintiffs' request for leave to amend the complaint to plead a procedural due process claim would be futile.[1] Plaintiffs seek

---

[1] Other than a fleeting reference to why the Court should have granted leave to amend to assert a due process claim, Plaintiffs did not present any substantive challenge to the Court's rejection of *Sheafnocker v. C.I.R.*, 642 F.3d 428 (3d Cir. 2011). Notably, as the government points out in its response, the Third Circuit vacated its opinion in that case "[u]pon presentation of facts that eliminate the basis for Joanne R. Scheafnocker's standing[.]" *Sheafnocker v. C.I.R.*, 2012 WL 1854183, at *1 (3d Cir. April 24, 2012).

reconsideration of the order on the grounds that the "court overlooked and/or misapprehended certain facts alleged in the Complaint, and certain arguments made in the Plaintiff's Response to the Government's Motion to Dismiss Action, such that the interests of justice require correction of the Order." (Dkt. 12). The government filed a response in opposition. (Dkt. 15).

The motion for reconsideration will be granted insofar as the Court will give consideration to the arguments raised. The Court's effort in that regard, however, was seriously hampered due to Plaintiffs' failure to cite relevant case law (or any at all) to support their positions. Notwithstanding, the Court will address the points raised in the Plaintiffs' motion in order to present the Eleventh Circuit—since an appeal has been taken[2]—with a clear record for review. In the end, the Court finds the motion for reconsideration to be without merit.

## STANDARD OF REVIEW

The Court will reconsider a prior ruling if there is an intervening change in controlling law, new evidence has become available, or there is a need to correct clear error or prevent manifest injustice. *See Dorsch v. Pilatus Aircraft Ltd.*, 2012 WL 1565447, at *1 (M.D. Fla. May 2, 2012). The Court "views reconsideration of a previous order as an extraordinary remedy, [therefore] the Court limits its application." *Ludwig v. Liberty Mut. Fire Ins. Co*, 2005 WL 1053691, at *3 (M.D. Fla. March 30, 2005). Of course, the Court always strives to reach the

---

[2] "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). But "a premature notice of appeal does not divest the district court of jurisdiction over the case." *United States v. Kapelushnik*, 306 F.3d 1090, 1094 (11th Cir. 2002). Although Plaintiffs fail to cite any specific rule as the basis for their motion, the Court reads the motion for reconsideration as one brought pursuant to Federal Rule of Civil Procedure 59(e). The motion for reconsideration was, in any event, timely under any permissible construction of the rule; therefore, the notice of appeal filed on January 25, 2013 was premature. *See* Rule 4(a)(4)(A)(i)-(vi), Fed. R. App. P. The Court, as a result, has subject matter jurisdiction to consider the motion for reconsideration.

correct result given the facts and applicable law and will, when appropriate, exercise its broad judgment to alter a judgment or order to achieve that end. A motion for reconsideration is not, however, the proper avenue to relitigate old matters already decided by the district court. *Jones v. Southern Pan Servcs.*, 450 Fed. App'x 860, 863 (11th Cir. 2012).

## DISCUSSION

The Plaintiffs raise several objections to the Court's order dismissing the claim with prejudice and each will be addressed in turn. At the outset, the Court will swiftly dismiss any notion that, as Plaintiffs suggest, the Court confused "Plaintiffs' interest in the underlying state-court forfeiture action with the current wrongful levy suit." (Dkt. 12, p. 2). Of course, the law firms of A&L and Sisco were wearing different hats in the state court litigation than they currently wear in this lawsuit; in state court they were advocates and here they are parties. That much is clear. What is not clear is why Plaintiffs would allege facts regarding the attorney fee claim and state court order denying that claim, *see* Dkt. 1, ¶¶ 22-24, when, as clarified in the motion for reconsideration, those allegations are entirely irrelevant to the action. (Dkt. 12, p. 3) ("[O]bviously the denial of the statutory fee claim as moot would have no logical or legal relevance to the issue in the instant wrongful levy action, which is based upon the Plaintiffs' contingent fee claim.") (emphasis added). The Court was, and continues to be, focused on whether the Complaint alleges a "fee simple or equivalent interest, a possessory interest, or a security interest in the property levied upon." *See* (Dkt. 11) (quoting *Frierdich v. United States*, 985 F.2d 379, 382-83 (7th Cir. 1993)). With that, the Court will turn to the objections.

**1. Plaintiffs did not and cannot allege the existence of a charging lien on the seized funds.**

Plaintiffs' first discernible objection is that the Court erred by finding as a matter of law that Plaintiffs do not have a valid charging lien on the levied funds. According to Plaintiffs,

"[a]n actual transfer of funds to the client is not necessary for an attorney fee lien to arise . . . [t]he lien arises by operation of law, not by physical possession of the funds by the client." (Dkt. 12, p. 7). Plaintiffs cite no law for this proposition. Yet, Plaintiffs express a concern that "[t]he court appears to have overlooked this state law." (Dkt. 12, p. 7). To allay such a fear, the Court independently researched the matter and found there to be a substantial amount of law on point and, interestingly, the law is not as Plaintiffs articulate.

As the government appropriately sets out in its response, "[i]n order for an attorney's charging lien to be imposed, Florida law requires: (1) a contract between the attorney and client; (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and (4) a timely notice of a request for a lien." *In re Washington*, 242 F.3d 1320, 1323 (11th Cir. 2001) (citing *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So. 2d 1383, 1384 (Fla. 1983)). No one disputes the first element is alleged and likely to be proven in this case. Rather, the order of dismissal focused on the "as of yet, inchoate transfer of the seized funds to their Clients to trigger the contingency clause of the fee agreement." The absence of collected funds plays into the analysis of the second and third factors.

Plaintiffs posit (without any citation to the law) that "[t]he lien arises by operation of law, not by physical possession of the funds by the client." *See* (Dkt. 12, p. 7). That statement is not in direct conflict with, but is rather a broader generalization of, the law in Florida. As noted by the Eleventh Circuit, the "interest created by a valid attorney's charging lien arises by operation of law <u>when all of the requirements of such a lien are satisfied</u> . . . ." *In re Washington*, 242 F.3d at 1323 (emphasis added). Stated differently, a charging lien is a legal interest in property that

takes effect only when the requirements of such a lien are met. The issue the Court must decide, then, is whether or not funds must be in the possession of the client to establish a charging lien under Florida law.

As so many courts have held, "[t]he lien may not issue if no proceeds have been recovered." *Yavitz v. Martinez, Charlip, Delgado & Befeler*, 568 So.2d 103, 105 (Fla. 3d DCA 1990); *see also Clay County Port, Inc. v. M/V Endeavor*, 2009 WL 3067101, at *6 (M.D. Fla. Sept. 23, 2009) (quoting *Noel v. Sheldon J. Schlesinger, P.A.*, 984 So. 2d 1265, 1266-67 (Fla. 4th DCA 2008)) ("Florida court have consistently insisted that there be 'tangible fruits of services' to which the charging lien can attach."); *Manzini & Assoc., P.A. v. Clark*, 971 So. 2d 882, 882 (Fla. 3d DCA 2007); *Robert C. Malt & Co. V. Carpet World Distrib., Inc.*, 861 So. 2d 1285 (Fla. 4th DCA 2004); *see, e.g., Mitchell v. Coleman*, 868 So. 2d 639, 641 (Fla. 2d DCA 2004) (remanding with instructions to trial court to amend the judgment limiting the charging lien to the proceeds that were actually recovered); *Litman, v. Fine, Jacobson, Schwartz, Nash, Block & England, P.A.*, 517 So.2d 88, 92 (Fla. 3d DCA 1987) ("[A]lthough it is said that a charging lien attaches to the *judgment*, where there are no *proceeds* of the judgment, there is nothing to which a lien may, as a practical matter, attach.") (emphasis in original) (internal citations omitted). What appears at first blush to be a relatively straightforward question is complicated by some nuanced arguments raised by Plaintiffs. Plaintiffs unnecessarily complicated the inquiry by raising the issues and then failing to provide adequate (or any at all) legal support for the claims.[3] In its constant

---

[3] In their motion for reconsideration, Plaintiffs state, "[h]ad the Plaintiffs been given a fair opportunity to respond to this issue before dismissal with prejudice, they could have argued that once the state trial court issued its order to return the seized to the Plaintiffs' Clients on August 25, 2010, as alleged at Paragraph 13 of the Plaintiffs' Complaint herein, the City held those funds in trust for the Plaintiffs' Clients, or that the Plaintiffs' Clients had constructive possession of the seized funds, despite the lack of actual transfer." (Dkt. 12, p. 8). Making such a generalized statement and then failing to support it with citations to the law is perhaps no more effective than

endeavor to achieve a just result in accordance with the law, however, the Court went ahead and did the research for them.

Properly focused, the inquiry is whether it is proper to hold as a matter of law that, in the absence of actual possession, the City of Tampa held the seized funds "in trust" for the benefit of Plaintiffs' clients in the underlying state action. In order for there to be a charging lien in a given case, there must be a "judgment, fund, or res, within the control of the court, to which the lien could attach." *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 562-64 (Fla. 1986) (Boyd, C.J., concurring in part and dissenting in part).[4] That there must be a thing to which the charging lien must attach is not merely a requirement without justification when one juxtaposes an action at law for the payment of legal fees with the equitable remedy afforded by way of a charging lien. Chief Justice Boyd did just that when he stated:

> The present case is an action at law for the payment of fees for legal services. A charging lien is an equitable remedy by which an attorney can have his fee for services rendered in connection with litigation secured to him in the judgment awarded to his client. Where the entitlement to receive a fee and that it should be paid out of the client's recovery are clearly shown to the court, this equitable device avoids the possibility that the lawyer will have to resort to an action at law to recover the fee. In this connection, it has been said that proceedings at law between attorney and client have long been disfavored. However, when the proceedings in which the legal services were provided have been finally terminated without the attorney having established his entitlement to a charging lien, it is generally too late for him to resort to this equitable remedy.

*Id.* at 563 (internal citations omitted). Each of the four requirements to establish a charging lien

---

not making the point at all.

[4] In that case, the majority held that no charging lien existed because the attorney did not properly notify his clients in the original action that he intended to pursue a charging lien with respect to certain settlement funds. *Id.* at 561. Chief Justice Boyd concurred with the majority's conclusion that there was no charging lien, but for a different reason.

makes good sense when viewed as necessary to achieve the equitable objective of resolving fee disputes between a lawyer and *his or her client* without the need to resort to a separate legal action. What Plaintiffs argue for here is the application of this equitable doctrine to resolve a dispute that is not between Plaintiffs and their clients, but rather between their clients and either the City of Tampa or the Internal Revenue Service. A prudent course of action may have been a wrong levy claim by the party in interest (i.e., Plaintiffs' clients) against the IRS. It may have also been prudent for the City of Tampa to seek clarification of the trial court's order in light of the notice of levy by the IRS that directly conflicted with that order. There are a host of scenarios that could be played out with regards to achieving the ultimate resolution Plaintiffs seek in this action, but the bottom line is that the equitable justifications underlying the imposition of a charging lien are simply not present unless there is something tangible to which a lien can attach and a dispute between the attorney and client regarding the fees to be paid.

The Complaint does not allege that Plaintiffs' clients are in possession of the funds such that a charging lien is created under Florida law. Plaintiffs allege that the City of Tampa transferred the seized funds to the office of the United States Attorney for the Middle District of Florida. *See* Dkt. 1, ¶ 20. The Court is not inclined to afford any weight to Plaintiffs' allegation that there exists a valid charging lien under Florida law "by virtue of accomplishing the condition of their contingent fee contracts with their clients[.]" *Id.* at ¶ 38. That is a textbook example of the very type of conclusory allegation that the Supreme Court held, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), would no longer pass muster under Federal Rule of Civil Procedure 8(a).

With regards to the third factor, Plaintiffs did not allege that their clients are trying to

avoid payment of the fees owed under the contract. *See Rose v. Marcus*, 622 So. 2d 63, 65 (Fla. 3d DCA 1993). This requirement would be, as a practical matter, difficult to establish in light of the allegation that the funds have been seized by the IRS.

**2. 26 U.S.C. § 6323(b)(8) does not independently confer standing to bring the wrongful levy action.**

Plaintiffs' reliance on 26 U.S.C. § 6323(b)(8) as an independent basis to establish standing to bring this wrongful levy action is misplaced. A claim brought pursuant to 26 U.S.C. § 6323(b)(8) is entirely dependent on the existence of a lien under Florida law. *See Capuano v. United States*, 955 F.2d 1427, 1433 (11th Cir. 1992) ("A purpose of section 6323(b)(8) is to give a superpriority to attorney compensation based on a lien which becomes choate *under local law* . . . .") (emphasis in original); *see also Reed & Stevens v. HIP Health Plan of Florida, Inc.*, 81 F. Supp. 2d 1335, 1338 (S.D. Fla. 1999) ("In order to benefit from the superpriority under this provision, an attorney must establish three elements: (1) that a fund was created out of a judgment or settlement of a claim; (2) *that local law would recognize the existence of a lien*; and (3) that the amount of the lien reflects the extent to which their efforts reasonably contributed to the award.") (internal citations omitted) (emphasis added). The absence of the charging lien under Florida law renders inapplicable 26 U.S.C. § 6323(b)(8).[5]

---

[5] As Plaintiffs note in their motion for reconsideration, the purpose of 26 U.S.C. § 6323(b)(8) is "to encourage attorneys to bring suits and obtain judgments that would put their clients in a position to be better able to pay their tax liabilities." (Dkt. 12, p.6 at n. 3) (quoting *United States v. Ripa*, 323 F.3d 73, 83 (2d Cir. 2003)). "If the lawyer represents a taxpayer whose interests are adverse to the government, however, the funds available to the government will not be enhanced by the lawyer's services." *Id.* That Plaintiffs' services did not maximize the government's available revenue, and indeed detracted from it, is an additional factor that militates against the application of 26 U.S.C. § 6323(b)(8) in this case.

### 3. Plaintiffs failed to bring the claim within the statute of limitations.

Putting aside for the moment whether Plaintiffs have standing, the instant action was not brought within the nine month limitations period set forth in 26 U.S.C. § 6532(c). Plaintiffs ostensibly concede that the appropriate starting date to determine whether the limitations period has run is August 27, 2010, the date the City of Tampa was served with the notice of levy, as the Court held in its order dismissing the claim. *See* (Dkt. 11, p. 11). According to the Plaintiffs, "the court appears to have overlooked the facts concerning the number of separate claimants for the seized funds, and the lack of any argument by the Government that there was a lien as to all of them." (Dkt. 12, pp. 8-9). The Court did not overlook those facts—they are irrelevant.

Plaintiffs rely on the existence of allegedly three different third parties in interest and only one tax lien to avoid the limitations period. According to the Complaint, "on or about August 27, 2010, the Internal Revenue Service ("IRS") served a Notice of Levy upon the City of Tampa, seeking possession of the seized funds, for internal-revenue taxes allegedly due and owing from some of the Claimants in the above-referenced action." (Dkt. 1, ¶ 14). Plaintiffs assert that the Court "overlooked" the critical fact that the IRS filed a notice of lien against Jorge M. Gonzalez-Betancourt, *see* (Dkt. 1, ¶ 16), but not against Michelle Gonzalez and First Medical Group. *See* (Dkt. 1, ¶ 17). This, according to Plaintiffs, means that there "is no record basis to find the claims of Michele Gonzalez and First Medical [Group] untimely." (Dkt. 12, p. 10). That argument conflates the procedural and substantive components of the wrongful levy analysis. To even get to the substantive argument, i.e., the priority of competing liens as to the seized funds, the Court must first determine whether the Plaintiffs filed this action within the statutorily prescribed period of time. Assuming there was standing, had Plaintiffs filed this lawsuit within

nine months of the notice of levy then perhaps the fact that the IRS did not file notices of lien as to the remaining individuals might be relevant to whether it was a wrongful levy in the first instance. As the Court already ruled, "[t]here being no allegation that Plaintiffs filed a request for the return of property on or before May 27, 2011, this Court is without subject matter jurisdiction to adjudicate the wrongful levy action." (Dkt. 11, p. 11). Accordingly, it is

**ORDERED** that Motion for Reconsideration or Rehearing of Order of Dismissal is GRANTED IN PART. Having fully considered the arguments, the Court does not find any of the Plaintiffs' arguments persuasive and the Court's prior order of dismissal shall remain in full force and effect. (Dkt. 11).

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 20th day of February, 2013.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record